

EXHIBIT 3

## IN THE CLINTON COUNTY MUNICIPAL COURT
## WILMINGTON, OHIO

| STATE OF OHIO | * | |
| --- | --- | --- |
| Plaintiff | * | CASE NO. CRB 0900774 |
| -vs- | * | JUDGMENT ENTRY |
| CHRISTOPHER L. KIRK | * | |
| Defendant | * | |

This matter is before the Honorable Dennis W. Mattingly, Acting Judge by Assignment, for consideration of several Motions and Motions Contra. The State of Ohio is represented by Special Prosecutor, Carol Davis, and the Defendant, Christopher Kirk, is represented by Attorney Dwight Brannon. The Court is considering said Motions without additional testimony or hearings by consent of the parties. The Court will therefore rely upon the pleadings filed, including affidavits, transcripts, and copies of cases in support of the arguments being advanced by the parties.

The history of the case is as follows: On Monday, May 12, 2009, at around 8:10 p.m., an incident occurred between the Defendant, Christopher Kirk, and his wife, Misty Kirk, at a residence located in Clinton County, Ohio. This was not their marital residence, but was that of a female friend of Christopher Kirk.

After a verbal and physical altercation had occurred between Christopher Kirk and Misty Kirk, they both returned to the marital residence to continue the discussion. This later discussion was low key and there were no allegations of physical or threatening

conduct by either party during this later discussion. Christopher Kirk, who had already moved from the marital residence in the days leading to the incident, ultimately departed the residence and went back to his parent's residence down the street.

The following morning, Tuesday, May 13, 2009, Misty Kirk went to the Clinton County Sheriff's Office to report that she had been physically assaulted by Christopher Kirk the evening before. She met with Detective Brian Edwards regarding the incident. Detective Edwards traveled to the scene of the incident to identify and interview possible witnesses. The first four (4) persons contacted had observed nothing in connection with the incident. A fifth witness observed Misty Kirk arriving at the scene and recalled that Misty Kirk has entered the parking lot by "sliding in the gravel."

On the morning of Wednesday, May 14, 2009, Misty Kirk called the Clinton County Sheriff's Office to advise that she wanted to file a criminal complaint against Christopher Kirk for domestic violence. Detective Edwards advised that he would have all of the paperwork ready for her signature. Misty Kirk arrived at the Clinton County Sheriff's Office and executed the charging documents at around 10:42 a.m. Detective Edwards then drove to the residence of Christopher Kirk and escorted him back to the Sheriff's Office for questioning. Prior to the questioning, Detective Edwards advised Christopher Kirk that he was investigating an incident between Christopher Kirk and Misty Kirk. Detective Edwards presented Christopher Kirk a "Garrity" form which essentially advised Christopher Kirk that he was being investigated for alleged violation of the code of behavior which applies to employees of the Clinton County Sheriff's Office. Christopher was advised that his statements could not be used in a subsequent criminal prosecution, but failure to answer all questions truthfully could result in a

termination of employment. Christopher Kirk prepared a written statement of his version of the incident and executed his signature thereon.

Detective Edwards then advised Christopher Kirk that he, Christopher Kirk, was not being honest about the incident and that there were witnesses that had identified Christopher Kirk as the aggressor. Detective Edwards then advised Christopher that a criminal complaint had been filed, and that a protection order had been issued prohibiting and contact by Christopher Kirk with Misty Kirk. Christopher Kirk was then arrested, placed in handcuffs, and moved into the corrections part of the facility. Detective Edwards then placed the criminal complaint and affidavit in a receptacle for municipal court.

Detective Edwards called Misty Kirk to advise her that Christopher Kirk had been arrested and was in jail. Detective Edwards then returned to the scene of the incident to locate and interview additional witnesses. There were no other witnesses located that were able to provide a statement.

On Thursday morning, May 15, 2009, Misty Kirk delivered a greeting card to Detective Edwards which was found in Christopher Kirk's vehicle. At approximately 8:59 a.m., the charging complaint and affidavit was filed with the Clerk of this Court. At around 10:30 a.m., Christopher Kirk was arraigned by video. Detective Edwards was in the courtroom, as was the complaining witness, a domestic violence advocate, and the City Prosecutor. Christopher Kirk was represented by private counsel who was also present.

In addressing bond, the Court heard from Detective Edwards, the domestic violence advocate and the prosecutor, all asking for a higher than normal bond. There

was also an allegation made by Detective Edwards, the domestic violence advocate and the prosecutor that Christopher Kirk had violated the terms of the protection order based upon a call from a third person to Misty Kirk. Bond was ultimately established, a protection order was issued, and the matter was set for a pretrial hearing.

Subsequently, Christopher Kirk participated in internal hearings within the Clinton County Sheriff's Office, which resulted in the termination of Christopher Kirk as a deputy.

Among the various motions filed by defense counsel is a Motion to Dismiss. The Court will address only this motion as it renders all other motion moot.

The Defendant herein was compelled to incriminate himself or face immediate dismissal. The Defendant was subsequently subjected to criminal prosecution using the incriminating statements. Defendant alleges that his rights as established by the United States Supreme Court under Garrity v. New Jersey (1967), 385 U.S. 493. This Court agrees.

In Garrity, the Court reviewed a case wherein police officers being investigated were given the choice to either incriminate themselves or forfeit their jobs under a New Jersey statute dealing with forfeiture of employment, tenure, and pension rights of persons refusing to testify based on self-incrimination grounds. The officers chose to make confessions, and some of their statements were used to convict them in subsequent criminal proceedings. The officers argued their confessions were coerced because if they failed to cooperate, they could lose their jobs. In answering the question as to "whether a State, contrary to the requirement of the Fourteenth Amendment, can use the threat of

discharge to secure incriminatory evidence against an employee," the <u>Garrity</u> court held the following at 500:

> {¶8} "We now hold the protection of the individual under the Fourteenth amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic."

Five years later, the United States Supreme Court in <u>Kastigar v. United States</u> (1972), 406 U.S. 441, 442, reviewed the following question:

> {¶10} "[W]hether the United States Government may compel testimony from an unwilling witness, who invokes the Fifth Amendment privilege against compulsory self-incrimination, by conferring on the witness immunity from use of the compelled testimony in subsequent criminal proceedings, as well as immunity from use of evidence derived from the testimony."

The <u>Kastigar</u> court at 460 held the following:

> {¶12} "'Once a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.' [<u>Murphy v. Waterfront Commission of New York Harbor</u> (1964)] 378 U.S. [52], at 79 n. 18, 84 S.Ct., at 1609.

This burden of proof is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony. This includes

In <u>State v. Conrad</u> (1990), 50 Ohio St.3d 1, the Supreme Court of Ohio followed the <u>Kastigar</u> holding and stated the following:

> {¶15} "In <u>Kastigar</u>, the United States Supreme Court dealt with an immunity statute similar to R.C. 101.44, viz., Section 6002, Title 18, U.S.Code, and reviewed its constitutionality with respect to the Fifth Amendment protection against self-incrimination. Therein, the court essentially held, inter alia, that the purpose of a statute granting use immunity or derivative use immunity is to leave

the witness and the prosecuting authorities in substantially the same position as if the witness had claimed the Fifth Amendment privilege. Id. at 457. In line with such purpose, the Kastigar court established a two-prong test that the prosecution must satisfy where a witness makes the claim that his or her immunized testimony was used: (1) the government must deny any use of the accused's own immunized testimony against him or her in a criminal case; and (2) the government must affirmatively prove that all of the evidence to be used at trial is derived from sources wholly independent of immunized testimony. Id. at 460-462."

Ohio courts have followed Kastigar and Conrad, concluding that those cases prohibit any use by the prosecutor of a defendant's statement, including non-evidentiary uses such as informing the decision to prosecute. State v. Brocious (Sept. 5, 2003), Clark App. No. 2002CA0089, 2003-Ohio-4708. The Brocious decision also adopted U.S. v. McDaniels, 482 F2d 305 (C.A. 8 1973), placing a 'heavy burden' on the government and enforced a strict interpretation upon the government.

Detective Edwards conducted the internal investigation and the criminal investigation. Herein lies the problem for the Court. While neither investigation was faulty, they were merged together in such an intricate way that it is now impossible to objectively determine what part of the Defendant's statements were used for the internal investigation and which parts were used to form the decision to prosecute criminally. There was no independent review by a prosecutor prior to filing the criminal charges, which reasonably implies that Detective Edwards made the decision to prosecute. This, by itself, is not unusual, but reflects how the two investigations were being merged. Detective Edwards appeared before the Court during the Defendant's arraignment, advocating for a higher than normal bond. Again, this by itself, is not unusual, but again reflects a merging of the investigations. The merger of the investigations violated the Defendant's constitutional rights as established under Garrity.

For this reason, the Court grants the Defendant's Motion to Dismiss. The charges against the Defendant as dismissed and the Defendant is released from bond.

_____
Dennis W. Mattingly, Acting Judge

Cc: Carol Davis, Special Prosecutor
     Dwight Brannon, Counsel for Defendant