**EXHIBIT 4**

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

CYNTHIA R. DAILEY, CLERK
10 MAR 29 PM 2:54
FILED-CT. OF APPEALS

STATE OF OHIO, :

    Plaintiff-Appellant, : CASE NO. CA2009-09-015

: **JUDGMENT ENTRY**

- vs - :

:

CHRISTOPHER L. KIRK, :

    Defendant-Appellee. :

    The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

    It is further ordered that a mandate be sent to the Clinton County Municipal Court for execution upon this judgment and that a certified copy of this Judgment Entry shall constitute the mandate pursuant to App.R. 27.

    Costs to be taxed in compliance with App.R. 24.

_____
William W. Young, Presiding Judge

_____
H.J. Bressler, Judge

_____
Robert A. Hendrickson, Judge

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

STATE OF OHIO, :

    Plaintiff-Appellant, :   CASE NO. CA2009-09-015

:   O P I N I O N
- vs -   3/29/2010

:

CHRISTOPHER L. KIRK, :

    Defendant-Appellee. :

CRIMINAL APPEAL FROM CLINTON COUNTY MUNICIPAL COURT
Case No. CRB-0900774

Richard W. Moyer, Clinton County Prosecuting Attorney, Brian A. Shidaker, 103 East Main Street, Wilmington, OH 45177, for plaintiff-appellant

Brannon & Associates, Dwight D. Brannon, 130 West Second Street, Suite 900, Dayton, OH 45402-1590, for defendant-appellee

**YOUNG, P.J.**

{¶1} Plaintiff-appellant, the state of Ohio, appeals a decision of the Clinton County Municipal Court dismissing domestic violence charges against defendant-appellee, Christopher L. Kirk.[1]

{¶2} Christopher was an off-duty Clinton County Deputy Sheriff on May 11, 2009

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar.

when he was involved in an alleged verbal and physical altercation with his wife, Misty Kirk, outside a residence located in Clinton County. This was not their marital residence but that of a female friend of Christopher. Following the altercation, Christopher and Misty separately drove away.

{¶3} The following morning (May 12), Misty went to the Clinton County Sheriff's Office to report she had been physically assaulted by Christopher the day before. Misty met with Lieutenant Brian Edwards regarding the incident. Lieutenant Edwards traveled to the scene of the incident to identify and interview possible witnesses. Of the five persons contacted, only one had witnessed the altercation.

{¶4} The following morning (May 13), Misty called Lieutenant Edwards and advised him she wanted to file charges against Christopher. Lieutenant Edwards told her to come to the sheriff's office where a complaint would be ready for her to sign. At the sheriff's office, Misty filled out and signed an affidavit and signed the complaint and a temporary protection order. Lieutenant Edwards notarized the documents and placed them in the "municipal court tray." He then drove to Christopher's home and brought him back to the sheriff's office. There, Lieutenant Edwards advised Christopher a complaint had been filed against him, gave him warnings pursuant to *Garrity v. New Jersey* (1967), 385 U.S. 493, 87 S.Ct. 616, and proceeded to interrogate him regarding the altercation. The *Garrity* warnings advised Christopher: he was being interrogated as part of an internal investigation for allegedly violating the sheriff's office's code of conduct; his statements could not be used against him in a subsequent criminal prosecution; and failure to answer all questions truthfully would result in his discharge. Following questioning, Christopher prepared and signed a written statement regarding the altercation.

{¶5} Lieutenant Edwards then advised Christopher that he (Christopher) was not being completely truthful as witnesses had identified him as the primary aggressor, Misty had

- 2 -

filed domestic violence charges against him, and a temporary protection order had been issued. Christopher was subsequently arrested and put in jail. Lieutenant Edwards then contacted Misty to advise her Christopher had been arrested and put in jail. Misty told the officer she had found a greeting card showing that Christopher and his female friend were more than friends. Lieutenant Edwards asked Misty to bring the card to the sheriff's office. He then drove back to the scene of the altercation to locate and interview additional witnesses but was unable to find any.

{¶6} The following morning (May 14), Misty delivered the greeting card to Lieutenant Edwards as well as a package addressed to the female friend Misty found in Christopher's pickup truck. The officer tagged the items as evidence. That same morning, the criminal complaint and affidavit were filed in the municipal court. During Christopher's subsequent arraignment, Lieutenant Edwards asked the court for a higher bond: "Your Honor, the State requests a higher bond than the normal bond schedule." The prosecutor and a domestic violence advocate likewise asked for a higher bond. On May 27, 2009, Christopher was terminated by the sheriff's office.

{¶7} Christopher moved to dismiss the complaint on the ground the merger of the internal investigation and the criminal investigation, both conducted by Lieutenant Edwards, violated his constitutional rights under *Garrity*. The record shows that Lieutenant Edwards prepared a report regarding his internal investigation and his criminal investigation. The report relates what Christopher and Misty told the officer, as well as the officer's comments to Christopher during the internal investigation interrogation, including the comment that Christopher was not completely truthful. The motion alleged that Lieutenant Edwards verbally reported Christopher's statements to the prosecutor, sent his report to the prosecutor, and later advised the prosecutor that Christopher had lied and that he was the

aggressor according to two witnesses.[2]

{¶8} In response, the state alleged that "it was only after the Internal Investigation was over and [Christopher] arrested on the private complaint, that Lt. Edwards contacted the Prosecutor. The Incident Report he furnished the Prosecutor the next day contained only the Incident Report and nothing regarding [the] content of the Internal Investigation." Addressing Christopher's *Garrity* argument, the state argued that:

{¶9} "The State vehemently denies any use of *Garrity* statements or interviews in deciding whether to prosecute the Defendant – or not. As stated, the alleged victim contacted the appropriate investigative agency to file her written statement, and as such an independent investigation took place. Witnesses were interviewed, pictures of the victim's injuries were recorded, and certainly enough evidence was collected to warrant the filing of the charge. It was only after this was completed that the Internal Investigation took place."

{¶10} On September 2, 2009, the municipal court dismissed the criminal complaint against Christopher on the ground the merger of the internal investigation and the criminal investigation violated Christopher's constitutional rights under *Garrity*. The municipal court found that "[w]hile neither investigation was faulty, they were merged together in such an intricate way that it is now impossible to objectively determine what part of the Defendant's statements were used for the internal investigation and which parts were used to form the decision to prosecute criminally. There was no independent review by a prosecutor prior to filing the criminal charges, which reasonably implies that [Lieutenant] Edwards made the decision to prosecute. This, by itself, is not unusual, but reflects how the two investigations were being merged. [Lieutenant] Edwards appeared before the Court during the Defendant's

---

2. The evidence submitted to the municipal court includes two versions of Lieutenant Edwards' report. One version with the prosecutor's initials does not contain the statements made by Christopher and Lieutenant Edwards during the internal investigation interrogation. The other version, which does not have the prosecutor's initials, does contain the statements made by Christopher and Lieutenant Edwards during the internal investigation interrogation.

- 4 -

arraignment, advocating for a higher than normal bond."

{¶11} The state appeals, raising one assignment of error:

{¶12} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN DISMISSING THE CRIMINAL COMPLAINT AND NOT CONSIDERING EVIDENTIARY METHODS TO HANDLE THE ALLEGED GARRITY VIOLATION."

{¶13} In *Garrity*, police officers being investigated for criminal activity were given a choice to either answer the questions asked during the internal investigation or forfeit their jobs. The officers chose to answer the questions. Some of their answers were later used against them in criminal proceedings. The United States Supreme Court held that the officers' confessions were compelled and not voluntary because the officers were given the choice between forfeiting their jobs or incriminating themselves. *Garrity*, 385 U.S. at 497-498. The Supreme Court held that the protection against self-incrimination prohibits use in subsequent criminal proceedings of statements made under threat of removal from office. Id. at 500.

{¶14} Five years later, the Supreme Court held that when a person is granted immunity to compel his testimony, prosecutorial authorities are prohibited from using the compelled testimony, as well as evidence directly or indirectly derived from such testimony, in any respect against the witness in later criminal proceedings. *Kastigar v. United States* (1972), 406 U.S. 441, 453, 92 S.Ct. 1653. A grant of immunity thus insures that the testimony cannot lead to the infliction of criminal penalties on the witness. Id. The Supreme Court established a two-prong test the prosecution must satisfy when a witness claims his immunized testimony was used: (1) the government must deny any use of the witness' own immunized testimony against him in a criminal case; and (2) the government must affirmatively prove that all of the evidence it proposes to use is derived from legitimate sources wholly independent of the compelled testimony. Id. at 460-461. Once a defendant

- 5 -

demonstrates he has testified, under a grant of immunity, to matters related to the criminal prosecution, the state has the heavy burden of showing that its evidence is not tainted by proving that all of the evidence it proposes to use was derived from legitimate independent sources. Id. at 460-461.

{¶15} In *State v. Conrad* (1990), 50 Ohio St.3d 1, the Ohio Supreme Court adopted the two-prong test set forth in *Kastigar*, and held that "whenever compelled testimony is used against the witness who provided it, any error cannot be held harmless." Id. at 4-5. In *State v. Jackson*, Slip Opinion No. 2010-Ohio-621, the supreme court held that "the state makes derivative use of a *Garrity* statement both when the prosecutor presents to the grand jury testimony from a witness to a *Garrity* statement and when the prosecutor reviews a *Garrity* statement in preparation for trial." Id. at ¶25. The supreme court further held that "[w]hen the state fails to prove that it did not make any use of a *Garrity* statement in obtaining an indictment, the indictment must be dismissed." Id. at ¶29. By contrast, "when a trial court rules after a *Kastigar* hearing that a prosecutor has used the defendant's compelled statement in preparation for trial after indictment, the appropriate remedy is for the trial court to suppress that statement and all evidence derived from the statement." Id. at ¶32.

{¶16} Upon reviewing the record before us, we find that the municipal court did not err by dismissing the criminal complaint against Christopher. At the outset, we note the state laments the fact the municipal court granted Christopher's motion to dismiss without holding a *Kastigar* hearing. Such was apparently the parties' choice. The state does not challenge the municipal court's assertion in its entry that "the Court is considering [motions filed by Christopher and the state] without additional testimony or hearings *by consent of the parties*. The Court will therefore rely upon the pleadings filed, including affidavits, transcripts, and copies of cases in support of the arguments being advanced by the parties." (Emphasis added.)

{¶17} The state argues that given the fact the *Garrity* statement was not used nor did it exist when Misty executed the complaint; the decision to prosecute was made before a *Garrity* statement was made; the facts supporting the complaint were not based on the *Garrity* statement; and there is no evidence the *Garrity* statement played any role in the prosecution, the municipal court erred by dismissing the complaint. The state asserts "[t]here is no *Garrity* violation where the prosecutor demonstrates [Christopher] will be tried on facts wholly independent of his *Garrity* statement."

{¶18} *Jackson*, *Conrad*, and *Kastigar* specifically prohibit any use by the prosecutor of a witness' immunized statement. Further, the burden is on the state to establish that no use was made of the immunized statement and that the evidence to be used at trial was derived from sources wholly independent of the immunized statement.

{¶19} Problematic in the case at bar is the fact Lieutenant Edwards simultaneously conducted both the internal investigation and the criminal investigation. It is true Misty signed the criminal complaint on the same day but before Christopher was interrogated by the officer for the internal investigation. However, as soon as the interrogation was over and Christopher was arrested and taken to jail, Lieutenant Edwards continued his criminal investigation that day and the day after by looking for additional witnesses and by tagging items brought by Misty as evidence. The *Garrity* statement certainly existed at the time the complaint was *filed* in the municipal court. Also problematic is the fact that Lieutenant Edwards appeared on behalf of the state at Christopher's arraignment the day after the internal investigation interrogation and sought a higher bond. The internal investigation and criminal investigation were clearly intertwined.

{¶20} The record does not show that there was an independent review by a prosecutor prior to filing the criminal charges. In fact, as the municipal court noted, the decision to prosecute was apparently made by Lieutenant Edwards. The record does not

show whether the *Garrity* statement played a role in the prosecution of Christopher. In its response to Christopher's motion to dismiss, the state "denie[d] any use of Garrity statements or interviews in deciding whether to prosecute the Defendant – or not," and asserted it was contacted by Lieutenant Edwards after the internal investigation was over and Christopher was arrested. However, the state did not specify what it was told by Lieutenant Edwards; nor did it indicate whether the contact occurred before or after the criminal complaint was filed with the municipal court, or before or after Christopher's arraignment.

{¶21} In *Jackson*, the supreme court noted that rather than assigning the same person to conduct both a criminal investigation and the internal investigation, "a police department can always assign the internal investigation of a police officer to an officer who has not taken part in and will not take part in the criminal investigation. In the alternative, a police department can simply wait until the conclusion of criminal proceedings before conducting an internal investigation." 2010-Ohio-621 at ¶30.

{¶22} Contrary to the state's assertion, the state did not prove that the evidence it intended to use at Christopher's trial was derived from legitimate sources wholly independent of the *Garrity* statement. In fact, there is no testimony from the state regarding what evidence it intended to use at trial or the sources of the evidence to be used at trial. The state did not testify because it agreed to forfeit a *Kastigar* hearing; nor did it file an affidavit detailing what evidence (and its sources) the prosecution intended to use at trial. See *State v. Bailey*, Fayette App. No. CA2007-04-013, 2008-Ohio-3075. The state did not deny Christopher's allegation that Lieutenant Edwards verbally reported Christopher's statements to the prosecutor and later advised the prosecutor that Christopher had lied and that he was the aggressor according to two witnesses. See *Lowery v. Walker* (Jan. 26, 1979), Athens App. No. 959 (not only may the testimony given under a grant of immunity not be utilized in a subsequent criminal prosecution, neither may it be used indirectly to secure other evidence

- 8 -

for use in such criminal prosecution).

{¶23} Because of the way both criminal and internal investigations were intertwined; based on the fact both investigations were conducted simultaneously by the same officer; and in the absence of a *Kastigar* hearing, it is not clear whether the state made any use of the *Garrity* statement. Further, the state did not establish that the evidence it intended to use at trial was derived from wholly independent sources. In light of the foregoing, we find that dismissal of the complaint was the appropriate remedy.

{¶24} The state's assignment of error is overruled.

{¶25} Judgment affirmed.

BRESSLER and HENDRICKSON, JJ., concur.

---

This opinion or decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/ROD/documents/. Final versions of decisions are also available on the Twelfth District's web site at: http://www.twelfth.courts.state.oh.us/search.asp