UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER KIRK,<br><br>Plaintiff,<br><br>v.<br><br>CLINTON COUNTY BOARD OF COMMISSIONERS, et al.,<br><br>Defendants. | : | NO. 1:10-CV-00351<br><br><br><br>**OPINION AND ORDER** |

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment Regarding Liability (doc. 17), Defendants' Response in Opposition (doc. 32), and Plaintiff's Reply (doc. 38). Also before the Court is Defendants' Motion for Summary Judgment (doc. 36), Plaintiff's Response (doc. 42), and Defendants' Reply (doc. 47). For the reasons indicated herein, the Court DENIES Plaintiff's motion and GRANTS Defendants' motion.

**I. Background**

Plaintiff Christopher Kirk ("Kirk"), started working for Defendant Clinton County Sheriff's Office ("CCSO"), as a Sheriff's Deputy on March 6, 2000 (doc. 1). He was certified as a K-9 Patrol and worked in such capacity for just over nine years, when on May 27, 2009 his employment was terminated due to a criminal complaint lodged against him for alleged domestic violence against his then-wife, Misty Kirk (Id.).

Specifically, on May 12, 2009, Misty Kirk complained to Defendant Detective Brian Edwards that Kirk had assaulted her the previous day, grabbing her by the arms and throwing her away from her truck when she attempted to confront him with allegations of marital infidelity outside the home of the alleged mistress, Amy McCleese (doc. 36). Misty Kirk reported to Edwards that she suffered bruises, scratches, and broken fingernails (Id.). Edwards documented Misty Kirk's injuries with photos, and interviewed witnesses who confirmed that they had seen Kirk many times throughout the year at the home of the alleged mistress (Id.). On May 13, 2009, Misty Kirk called Defendant Edwards and indicated she wanted to file domestic violence charges against Kirk (Id.). Edwards gave her a blank affidavit which she completed, in which she described that during the May 11 altercation Kirk had been "enraged," "started screaming and ran towards [her]," that she was afraid and tried to leave when Kirk, "grabbed me around the waist and pulled me back and then threw me back. I was screaming for him to stop" (doc. 32). Misty Kirk's affidavit further indicated that Kirk had grabbed her by the left wrist, "causing me to yell at him to let me go" (Id.). Once Kirk released her, she further stated she found several of her fingernails were broken and she "felt pain on my left side of my back" (Id.).

Defendant Edwards filed Misty Kirk's Complaint in the filing box at the Sheriff's Office on May 13, before performing any

further investigation (Id.). At such moment, Defendant Edwards made the decision to arrest Kirk for domestic violence (Id.).

Edwards then went to Plaintiff's house and escorted him to the Sheriff's Office for questioning (Id.). Prior to questioning, Edwards informed Kirk that Edwards was investigating an incident between Kirk and his wife (Id.). Edwards further advised Plaintiff that his statements could not be used in a subsequent criminal prosecution, but failure to answer all questions truthfully could result in a termination of employment (Id.).

Plaintiff completed a statement concerning his altercation with Misty Kirk, that provided a different version of the events, in which Misty Kirk essentially attacked him and he acted in self-defense (doc. 17).[1] In his statement, Plaintiff admitted that he had grabbed his wife's arms to protect himself, and that he pushed her so that he could get away (Id.).

According to Plaintiff, Edwards told Plaintiff that Plaintiff was lying, falsely indicated that there were witnesses against him, and informed him that a criminal complaint had been

[1]According to Plaintiff, the allegations against him by Misty Kirk that he had assaulted her were completely false, and that in fact, Misty Kirk had attacked him, put him in a chocking headlock, and caused him to believe he was in imminent danger (doc. 17). According to Plaintiff, Misty Kirk later admitted to him that she filed the domestic violence charge because she was angry that Plaintiff wanted a divorce, and she thought such charge would give her an upper hand in the divorce (Id.).

filed (Id.). Edwards then placed Plaintiff under arrest (doc. 32).

Edwards indicated he kept his notes and interview with Kirk separate from any of his files related to the criminal investigation (Id.). However, Edwards later participated in Kirk's bond hearing, seeking a higher bond based on his belief that Kirk was attempting to circumvent the civil protection order entered against him, by using a relative to contact Misty Kirk (Id.).

Plaintiff was released on bond, and on May 20, 2009, received a pre-disciplinary conference (doc. 32). At such conference he was charged with 1) having assaulted Misty Kirk, 2) falsifying information for not disclosing his involvement with McCleese, and 3) being unable to carry a firearm because of the weapons disability required in the civil protection order (Id.). After a disciplary hearing, Defendant Sheriff Fizer was found to be justified in continuing the disciplinary process (Id.). On May 27, 2009, Defendant Sheriff Fizer terminated Plaintiff's employment for each of the above reasons (Id.).

The prosecution in the domestic violence case, through a public records request, sought Kirk's employment file from Defendants, which included his statements made to Defendant Edwards. However, the record shows that the prosecution had already obtained such statements from Kirk's counsel on June 15, 2009, who submitted them "under seal," and warned that such statements could not be used at trial, although they were necessary

for pretrial purposes (doc. 32).

On September 2, 2009, the trial court ultimately dismissed the criminal case against Kirk[2] (Id.). Kirk was reinstated to a dispatch position[3], with back-pay, on January 7, 2010 (doc. 1).

On May 28, 2010, Plaintiff filed the Complaint in this matter, seeking redress for deprivation of civil rights, breach of contract, false arrest, malicious prosecution, abuse of process, defamation, intentional infliction of emotional distress, and for declaratory judgment (doc. 1). He sues the Clinton County Board of Commissioners ("the Board"), Sheriff Ralph Fizer, Jr. ("Fizer"), and Detective Edwards, seeking compensatory damages, punitive damages as appropriate, and attorney's fees (Id.).[4]

---

[2]The trial court found that "the internal investigation and criminal investigation. . . were merged together in such an intricate way that it is now impossible to determine which parts were used for the internal investigation and which parts were used to form the decision to prosecute criminally" (doc. 1). The trial court found that such merger of investigations constituted a violation of Kirk's constitutional rights under Garrity v. New Jersey, 385 U.S. 493, 500 (1967), in which the Supreme Court held that the Constitutional protection of the Fourteenth Amendment against coerced statements prohibits the use in subsequent criminal proceedings of statements obtained under threat of removal from office.

[3]Kirk was not reinstated to his K-9 position because such program had been cut (doc. 32).

[4]In his briefing, Plaintiff has abandoned his claim for declaratory judgment, as moot; his equal protection claim; and his malicious prosecution and abuse of process claims as to the Board and Fizer. The Court finds Defendants merit summary judgment as to these claims.

On February 21, 2001, Plaintiff filed the instant motion for partial summary judgment regarding liability with regards to his Section 1983 claims that Defendants violated his due process and substantive due process rights by using his compelled statement against him in a criminal proceeding (doc. 17).  Defendants responded in opposition (doc. 32), and further filed their own cross motion, claiming there are no genuine issues of fact to prevent judgment as a matter of law on all of Plaintiff's claims, in their favor (doc. 36).  Plaintiff responded (doc. 42), such that this matter is ripe for the Court's consideration.

**II. Applicable Legal Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence

of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th

Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

## III. Analysis

### A. Plaintiff’s Motion and Defendants’ Response

Plaintiff’s motion is essentially premised on the theory that the federal court is collaterally estopped by the state court’s determination that his right against self-incrimination was violated (doc. 17). However in his Reply, he concedes that the

dismissal of his criminal indictment in the state court does not have issue preclusive effect in this matter (doc. 38)[5]. Nonetheless, Plaintiff argues the state court's decision should be highly persuasive because the same factual record that existed before the state court is before this court (Id.). Plaintiff further argues that he should prevail on his due process claim for the simple fact that Edwards improperly inquired into the nature of his private relationship with Amy McCleese (doc. 38).

Defendants argue that Plaintiff has no evidence that they violated his right against self-incrimation for several reasons (doc. 32). First, they argue Plaintiff waived the right to prevent the prosecution from seeing his statements when Plaintiff's lawyer turned over such statements(Id.). Second, they argue there is no evidence that the prosecution used any of the statements at trial (Id.). Third, they argue that Defendants have qualified immunity because of their reasonable efforts to follow Ohio's public records law in turning over Plaintiff's statements to the prosecution (Id.).

As for Defendant Edwards specifically, Defendants argue

---

[5]Defendants correctly argued in their Response that because there is no privity between parties, principles of res judicata and issue preclusion do not apply here (doc. 32, citing O'Nesti v. DeBartolo Realty Corp., 113 Ohio St.3d 59 (Ohio 2007). In any event, Defendants argue, as the burdens in the underlying criminal case and the instant civil case are different, and the burden has shifted to Plaintiff in this case, issue preclusion is inapplicable.

he used nothing learned through the administrative investigation to assist with Plaintiff's criminal prosecution, but that he only was involved to seek higher bond for Plaintiff based on information obtained from other sources (Id.).  Even if Edwards' involvement in the proceedings violated Plaintiff's constitutional rights, Defendants argue his actions were reasonable such that he should be entitled to qualified immunity (Id.).

As for Plaintiff's due process claims, Defendants contend the record shows he received a pre-termination hearing which provided the requisite notice of the charges against him, an explanation of the evidence, and an opportunity for him to provide his side of the story (Id. citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-40 (1985)).  Moreover, Defendants contend Plaintiff cannot plead or prove he received an inadeqate post-termination hearing, because he waived such a hearing when he dropped his appeal of the termination after reaching a settlement with Defendants reinstating his employment (Id. citing Nunn v. Lynch, 113 Fed.Appx. 55, 62 (6th Cir. 2004)).

Finally Defendants argue Plaintiff is not entitled to summary judgment on his abuse of process claim, first, because no such claim exists in federal law (Id. citing Voyticky v. Timberlake, 412 F.3d 669, 676 (6th Cir. 2005)).  Should the Court accept a state law abuse of process claim, Defendants argue such a claim would also fail, because Plaintiff has pleaded that

Defendants acted without probable cause (Id.). The first prong of an abuse of process claim requires that a legal proceeding has been set in motion properly and with probable cause (Id. citing Yaklevich v. Kemp, Schaeffer & Rowe, 68 Ohio St.3d 294, 297 (Ohio 1994). Moreover, Defendants contend there is no evidence to prove the other elements of an abuse of process claim, that the proceedings against him were perverted in an attempt to accomplish some ulterior motive, or that he suffered direct damage from a wrongful use of process by the Defendants (Id.). In Defendants' view, Misty Kirk provided probable cause for the initiation of the proceedings against Plaintiff, so he cannot prove as a matter of law that they in any way directly caused his damages (Id.).

Having reviewed this matter, this Court finds Defendants' positions correct in response to Plaintiff's motion. Although the Court has reviewed the finding of the state court that Defendant Edward's involvement in both the administrative investigation and the criminal matter brought against Kirk was troubling, the Court is in no way bound by such conclusion. The Court finds correct Defendant's position that there is no evidence that the prosecution even ever used Kirk's statements in the criminal trial. Plaintiff's own counsel turned such information over to the prosecution before the Defendants ever did, while making it clear to the prosecution that it was prohibited from using such materials. Finally, a review of the statement itself reveals in

context that the statement is not really incriminating, but rather exonerating: Kirk claimed he was attacked and acted in self-defense. The information Plaintiff contends is incriminating, that he engaged in an altercation and grabbed Misty Kirk, was already available from other sources, namely, the affidavit of Misty Kirk. Such evidence would have been admissible at trial. Under these circumstances, the Court does not see an actionable material violation of Kirk's right against self-incrimination.

The Court further sees no violation of Plaintiff's due process rights as the record shows he received the required pre-termination hearing. Defendant Edward's inquiry into the nature of Plaintiff's relationship with McCleese was relevant to the investigation in light of the context of Misty Kirk's allegations. Finally, no abuse of process claim lies here as Plaintiff has pleaded that Defendant had no probable cause of his arrest. Such allegation is fatal to his abuse of process claim.

Accordingly, the Court DENIES Plaintiff's motion for summary judgment as to liability.

**B. Defendants' Motion and Plaintiff's Response**

The core theory of Defendants is that Kirk's arrest was supported by probable cause and he received due process such that the claims against them fail (docs. 36, 47). As there is no evidence of a policy or failure to train, they contend there is further no claim against Sheriff Fizer or the Board under Monell

(Id.).

A police officer is permitted to make an arrest when there is probable cause that an individual committed a crime. "A finding of probable cause does not require an actual showing of criminal activity, but rather 'requires' only a probability or substantial chance of criminal activity." United States v. Harris, 255 F.3d 288, at 292 (6th Cir. 2001). Probable cause is defined by asking "whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

Although Plaintiff contends there is plenty of evidence in the record that should have thrown into question a finding of probable cause, Defendants correctly argue that what matters is what evidence was before Edwards before he made the arrest. There is no factual dispute as to the evidence Edwards had at such time. Edwards met twice with Misty Kirk who described her altercation with Kirk as an "assault." Edwards documented visible injuries. Edwards obtained information that at least corroborated in part Misty Kirk's story. Edwards obtained a sworn statement from Misty Kirk indicating that Kirk had grabbed her and pushed her. The Court agrees that a prudent officer hearing the allegations of Misty Kirk and assessing her injuries could conclude she was the

victim of domestic violence. As such, Edwards was justified in arresting Plaintiff. The Court finds that no reasonable jury could conclude otherwise. Edwards had probable cause as a matter of law and this is the only reasonable determination possible. The Court therefore rejects Plaintiff's contention that the issue of probable cause presents a jury question that precludes summary judgment (doc. 42, citing Gardenshire v. Schubert, 205 F.3d 303, 315 (6th Cir. 2000)).

Plaintiff is justifiably upset that Edwards told him there were witnesses against him, when at that time, this was a misrepresentation. Plaintiff is also justifiably upset that evidence in the record shows Edwards was aggressive with witnesses. However unfortunate these alleged actions, they do not detract from the fact that Edwards had probable cause to make the arrest.

It appears to the Court that of all situations, among the most difficult officers encounter involve those of domestic violence. In such situations, officers are correct to ensure the saftey of an alleged victim, even if they mistakenly arrest an innocent. Illinois v. Wardlow, 528 U.S. 119, 126 (2000)(The law accepts the risk that officers may arrest the innocent. Persons arrested and detained on probable cause to believe they may have committed a crime may turn out to be innocent).

Having so concluded, the Court agrees with Defendants that Edwards is entitled to summary judgment on Plaintiff's

unlawful arrest claim under Section 1983. As there is no underlying constitutional violation, Defendants Fizer and the Board are similarly entitled to summary judgment. Similarly, as Edwards had probable cause there is no basis for his claim for malicious prosecution. McKinley v. City of Mansfield, 404 F.3d 418, 444-45 (6th Cir. 2005)(it is "firmly established that where there is probable cause to prosecute, a § 1983 action for malicious prosecution will not lie"). Plaintiff cannot show that his detention was unlawful, and therefore his claim for false arrest under Ohio law also fails. Harvey v. Horn, 33 Ohio App.3d 140, 146 (1986).

The Court already addressed its views concerning Plaintiff's claims that his rights against self-incrimination were violated, above, in relation to Plaintiff's motion for summary judgment. The Court finds Defendant Edwards entitled to qualified immunity to the extent that any violation occurred. At the time that Edwards conducted both the administrative and criminal investigations, no United States Supreme Court, Sixth Circuit, or Ohio case had found such conduct improper. Although a more recent Ohio Supreme Court case found that the same officer should not conduct both investigations, State v. Jackson, 125 Ohio St.3d 218, 225 (Ohio 2010), such principle was in no way clearly established in May 2009. As Plaintiff's breach of contract claim is premised on the theory that Edwards violated his right against self-

incrimination, and the Court found above that there was no material violation, the Court similarly grants summary judgment to Defendants on Plaintiff's contract claim.

Plaintiff claims Defendants' actions in this case were outrageous such that he has a viable claim for intentional infliction of emotional distress. For the reasons already articulated, the Court disagrees. No reasonable jury could find that the arrest, investigation, and prosecution were "beyond all possible bounds of decency such that it is atrocious and intolerable in civilized community," a required finding to support such a claim. Yeager v. Local Union 2, 6 Ohio St.3d 369, 375 (1983). Similarly Plaintiff's abuse of process claim fails as no reasonable jury could find the requisite showing that the proceedings against him were "perverted to attempt to accomplish an ulterior purpose for which [they were] not designed." Voyticky v. Village of Timberlake, 412 F.3d 669, 677 (6th Cir. 2005). There is simply no evidence in this case that Defendants had any purpose other than to enforce the laws against domestic violence.

Finally, the Court rejects Plaintiff's claim against Defendant Fizer in his official capacity for defamation. The record shows Fizer stated publicly that Plaintiff was detained and that a domestic violence case was pending. This was all true. The record shows that at most, Fizer inaccurately stated the location of Misty Kirk's bruises. The Court does not believe a reasonable

jury could find malice in the Sheriff's statements, and as such, no exception applies to statutory immunity under Ohio Revised Code 2744.02.

**III. Conclusion**

This is a regrettable case where a domestic dispute between a soon-to-be divorced couple became ugly. It is unfortunate that Plaintiff lost his job and spent months in legal proceedings. However, the case against him was ultimately dropped and he was reinstated, with back pay. In the Court's view, Plaintiff would be wise to leave these events behind him and move on.

There is no real evidence in this case that Defendants acted in any manner so as to violate Plaintiff's constitutional rights or rights under state law. The only potential exception is that Defendant Edwards was involved in both the administrative investigation and criminal proceedings, but such involvement was not clearly established to be improper at the time. He is entitled to qualified immunity.

The evidence in the record rather shows that Defendants acted on probable cause that Misty Kirk was the victim of domestic violence. Because no reasonable jury could find otherwise, the Court finds correct Defendants' position as articulated in their motion, and they are entitled to summary judgment.

Accordingly, the Court DENIES Plaintiff's Motion for

Partial Summary Judgment Regarding Liability (doc. 17), and GRANTS Defendants’ Motion for Summary Judgment (doc. 36).

SO ORDERED.

Dated: October 26, 2011

/s/ S. Arthur Spiegel
S. Arthur Spiegel
United States Senior District Judge